WINIFRED POST AND OTHERS, RESPONDENTS, *v.* MAX WEIL, APPELLANT.

*Title — condition subsequent — Stranger to title.*

Hogan contracted to sell certain land to Mark upon condition, that no part thereof or buildings thereon "should ever be used or occupied as a tavern." Subsequently he conveyed the same land to trustees, subject to the said agreement. Thereafter he and the trustees conveyed the land to Mark by a tripartite deed, (reciting the agreement and subsequent conveyance to the trustees), "subject to and upon the condition hereinbefore expressed, unto the said Mark, his heirs and assigns." The deed contained a covenant by Hogan and the trustees that some or one of them were or was lawfully seized, etc., and full covenant of warranty by Hogan. Subsequently the trustees reconveyed to Hogan all the property undisposed of by them. *Held* (1), that the condition was reserved to Hogan and not to the trustees; (2), that he was not a stranger to the title, and that the reservation to him was valid; (3), that the existence of the condition was such a defect as justified a purchaser in refusing to accept the title.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

*James C. Carter*, for the appellant.

*Wm. M. Evarts*, for the respondent.

BRADY, J.:

This is an appeal from a judgment decreeing a specific performance by the defendants of an agreement to purchase lands. At an auction sale of real estate belonging to the plaintiffs, on the 1st of April, 1873, the defendant made a large purchase. He paid *ten per cent* of the purchase money, and the auctioneer's fee; and was to pay the residue on the fifteenth of May following. By the terms of the sale, purchasers were to have a good title in fee simple, with

certain exceptions, not material to be stated. An examination of the title, by the attorneys for the purchaser, disclosed the fact that, on the 21st day of January, 1811, one Michael Hogan, then owner of the property and from whom the plaintiffs, through divers *mesne* conveyances, derived their title, agreed in writing to sell a tract of land of which the premises purchased were a part, to one Jacob Mark, for the sum of $16,000, upon the special condition that no part of the land or buildings thereon "*should ever be used or occupied as a tavern.*" Four days afterwards, and before performing his agreement aforesaid, Hogan conveyed the same tract which he had agreed to convey to Mark, unto Robert Lenox, Jacob Stout and John Wells, "subject to the aforesaid contract or agreement," and upon certain trusts in the said indenture expressed. Neither the agreement to sell to Mark, nor the trust indenture aforesaid are, so far as is known, now in existence; nor is any thing known of their contents, except what is recited in the deed next to be mentioned. On the 29th day of May, 1811, a deed was executed between Hogan and wife, parties of the first part, Lenox, Stout and Wells, parties of the second part, and Mark of the third part, reciting that Hogan "did, in and by a certain agreement in writing, bearing date on the twenty-first day of January, one thousand eight hundred and eleven, agree to sell to the said Jacob Mark, the party of the third part, the tract, piece or parcel of land hereinafter mentioned and described, with the house, outhouses and buildings thereon, for the sum of sixteen thousand dollars, upon the special condition that no part of the land or buildings thereon should ever be used or occupied as a tavern." The foregoing extract is all that is known of the agreement. The deed last mentioned continues with the following recital: "And, whereas, the said Michael Hogan, and Frances his wife, did, in and by a certain indenture, bearing date on the twenty-fifth day of January, in the year of our Lord, one thousand eight hundred and eleven, made between them, the said Michael Hogan and Frances his wife, of the first part, and the aforesaid Robert Lenox, Jacob Stout and John Wells, of the second part, grant, bargain, sell, alien, release, convey and confirm unto them, the said Robert Lenox, Jacob Stout and John Wells, the survivors and survivor of them, and the heirs and assigns of such survivor, the premises aforesaid, and

subject to the aforesaid contract or agreement, upon certain trusts in the said indenture expressed; so nevertheless, that the purchasers of the premises be not answerable for, nor in any wise bound to see to the application of the purchase money, as by the said indenture, reference being had thereunto, may more fully appear." This last recital contains the only information of the existence or contents of the trust conveyance therein mentioned. The deed then proceeds to convey by apt words, the tract of land from Michael Hogan and wife, to Jacob Mark, for the expressed consideration of one dollar, reserving a condition in these words: "*Provided always, and these premises are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected, or to be erected, be at any time hereafter used or occupied as a tavern or public house of any kind.*" The deed then further proceeds to convey the same tract of land from Lenox, Stout and Wells to the same Jacob Mark, for the expressed consideration of sixteen thousand dollars, "*subject to and upon the condition hereinbefore expressed, unto the said Jacob Mark, his heirs and assigns,*" and contains, among other covenants, one on the part of Hogan, "*that they, the said Michael Hogan, and Frances his wife, the said parties of the first part, or they, the said Robert Lenox, Jacob Stout and John Wells, the parties of the second part, some or one of them is, or are, lawfully seized of a good, sure, and undefeasible estate of inheritance,*" etc., and also a full covenant of warranty of Michael Hogan. It further appeared, that on the 21st of July, 1819, Lenox, Stout and Wells executed to Hogan an instrument reconveying whatever property conveyed to them by Hogan in trust, had not been sold or disposed of.

The plaintiff's title was derived through this deed. Some evidence was offered and received, subject to exception, for the purpose of showing that the condition reserved by this deed had been extinguished by a release; but the learned judge after argument, held it to be wholly incompetent, and refused to find any such release. The learned judge held that the condition was a condition subsequent, and unless in some manner extinguished, was a blemish upon the title, which would justify the purchasers in refusing to accept it. He held, however, that treating the condition as reserved

to Hogan, the reservation was void, on the ground that he was a stranger to the estate at the time of the execution of the deed; and treating it as reserved to Lenox, Stout and Wells, it was extinguished by the reconveyance of July 21st, 1819. That consequently, *quacumque via*, the condition no longer existed.

He therefore held the plaintiffs entitled to a specific performance, and judgment to that effect having been entered, this appeal was taken therefrom to the General Term. This statement of the facts established by the evidence, prepared by the appellant's counsel, is adopted as a correct exposition of the incidents and results of the trial, but the question which impresses itself *in limine* upon a clear comprehension of them and the evidence given is, whether a release of the condition was in fact executed, and it is a very important one. The plaintiffs have however taken no exception to the finding of the learned justice against them on that subject and his conclusion is binding. Whether there was one or not is discussed it is true upon the briefs submitted, but the question is not saved for review by exception, and it must be assumed that the plaintiffs relied upon the other conclusions of which the judgment was predicated. In presenting the questions apparently involved, the counsel for the respective parties have not only distinguished themselves by exhaustive argument, but have placed before us ample and able briefs. Their researches have not been confined to the realm of conditions alone. Every thing bearing upon the subject directly and indirectly has been developed and discussed, and the court has been put in possession of all the learning necessary to facilitate the determination of the issue between them. If any criticism be appropriate it is that they have done too much, but careful and astute counsel are always comprehensive and thorough, when important rights and intricate questions are involved.

The subject to be considered will, nevertheless, be briefly discussed. The views entertained about it can be stated with little elaboration. It must be said, at the start, that the condition imposed upon Marks was, in all respects, perfect to accomplish the object in view. It was provided for and assented to by him when the contract of sale was executed, and again when he received from Hogan and his trustees the deed conveying the land purchased.

We are not advised, because the deed to them was not attainable, what the trust was which Hogan conferred upon his trustees, but that they fully performed it is evident from the subsequent conveyance by them to him. The condition was perfect in itself, and it was annexed to the transferred estate in form and substance, so as to burden it with the consequences of its violation. It is not necessary to discuss or explain the origin, force or effect of conditions, or the tendency of courts to prevent their operation upon slight grounds. We know that forfeitures are not in high repute, and we cannot feel that they should be. They are oppressive in character, if not ungenerous in design; but, nevertheless, when they are legal and intact, they must receive due consideration, and their vitality must be declared. Assuming the condition, then, to be legal, and that no release of it was executed, the question in this controversy which seems controlling presents itself, and that is whether, by the conveyance to Marks the condition was reserved to Hogan or to the trustees. The learned justice presiding at Special Term thought that it was reserved to the latter. Was this conclusion correct? The trustees uniting with Hogan in the deed to Marks were acting for Hogan, and in conveying the property were carrying out the agreement of sale, which he had made before they were invested with the powers conferred upon them by him. On examination of that instrument it will appear, that the grant is based upon the agreement of sale which is recited between Hogan and Marks, containing the condition which the former imposed upon the estate to be transferred. It will also appear that Hogan and wife convey to Marks, annexing the condition in proper form, but that the trustees convey it subject to and upon the condition thereinbefore expressed. The condition adopted by them is that asserted in accordance with the agreement of sale mentioned, and the grant already made by Hogan and wife, and in the same relation to the contracting parties. The condition thereinbefore expressed is that imposed by Hogan for his benefit, and assented to and accorded him by Marks. There is no other reservation made by the trustees, and therefore none in their favor. It is Hogan's condition and not theirs, which is preserved. It has, therefore, been aptly said, that " the contract to convey; the intermediate grant by Hogan to the trustees, and the final settlement of the

rights of all the parties by the tripartite deed, constitute, in the reason of the thing and in the judgment of law, one transaction. (See *Osborn* v. *Phelps*, 19 Conn., 63, 89 ; *Jackson* v. *Dunsbagh*, 1 Johns. Cas, 92 ; *Stow* v. *Tifft*, 15 Johns., 458 ; *Church* v. *Brown*, 21 N. Y., 315, 330.) Together they form the assurance of this estate to Marks. " Hogan was not a stranger to it, and being in substance the original grantor to Marks, he was properly the reservee." The intent to reserve the condition to Hogan, seems to be clearly apparent therefore. The whole structure of the tripartite conveyance confirms this view. He was in fact the grantor, not a stranger, uniting in the conveyance to Marks, with his own trustees to whom he had conveyed the title for certain purposes, one of which was to carry out his agreement with Marks, but securing to him in so doing all its advantages and preserving for him the condition provided by antecedent stipulation. Courts look to the end contemplated by a deed, and not merely to the mode taken to obtain it. The intention will prevail if it can be ascertained and made dominant without violating some principle of law or equity that should be sustained. This rule of interpretation is adopted and made imperative in this State by statute. (*Roe* v. *Tranmar*, 2 Smith's Leading Cases [7th Am. ed.], 461, note; *Jackson* v. *Dunsbagh*, 1 Johns. Cases, 92 ; 1 R. S., 748, § 2 ; *Nicoll* v. *N. Y. and Erie R. R. Co.*, 12 N. Y., 128 ; *Bridger* v. *Pierson*, 45 N. Y., 604.) The principle applies to conditions as well (See note to *Dumpor's Case*, 1 Smith's Leading Cases [6th Am. ed.], 128 ; *Nicoll* v. *N. Y. and Erie R. R. Co.*, *supra*.) There are other consideration which favor this view as to the intention of the grantors. It is true that we are to assume that all the estate of Hogan in the land passed from him to his trustees, *but subject to the trust*. We are in ignorance as to what that trust was. The conveyancer, and it may be said all the parties in interest, deemed it necessary to unite Hogan and wife with the trustees in the conveyance to Mark, although all the estate he had, had been aliened to the trustees. It is not unreasonable to suppose that this formality was predicated of the proposition, that by the then asserted law of the State, conditions such as that contained in the deed to Marks could only be reserved for the benefit of the grantor and his heirs, and that no other could take advantage of them. (*Nicoll* v. *N. Y. and Erie R. R. Co.*,

*supra.*) It was doubtless in the minds of the trustees and Hogan that the former after accomplishing the object of the grant from him, might, as they did in fact, transfer or convey to him, the estate unappropriated and as the land conveyed to Marks if forfeited by condition broken might not be necessary for the full performance of the trust duties, the condition should be continued for the benefit of Hogan by the deed by which the grant was perfected to Marks. This was a cautious and proper view of the subject considered in all its relations present and future and with reference to the rules of law or the doubts that might arise. It seemed to be settled at least that before breach there was no assignable interest (12 N. Y., *supra*) and there being no breach a reconveyance might destroy the condition itself if it were reserved to the trustees and not to Hogan. Hence no doubt the character of the grant from Hogan in the tripartite deed, by which he warranted the title and assumed the responsibility which such a covenant imposes, and hence the full covenants by him made in that instrument. It follows from these views that the judgment pronounced below was erroneous and should be reversed.

DANIELS, J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed, new trial ordered, costs to abide event.